UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLA B. THATCH, | ) | CASE NO. 1:09CV454 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| -vs- | ) | |
| | ) | MEMORANDUM OF OPINION |
| COMMISSIONER | ) | AND ORDER |
| OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

On December 23, 2011, Attorney Paulette Balin moved for an award of attorney fees under 42 U.S.C. § 406(b). The matter was fully briefed and the Court then set the matter for oral hearing. The Court conducted the hearing on June 20, 2012, allowing all the parties to be heard. On June 22, 2012, Balin filed a notice of withdrawal of her motion. However, the Court has taken no action on that notice of withdrawal. Moreover, given what was learned during the oral hearing, the Court will not act on that notice of withdrawal and will instead DENY the motion for attorney fees.

I. INTRODUCTION

As this Court has previously noted in its initial scheduling order governing Social Security appeals, claimants face lengthy delays at the administrative level simply to have their claims heard. As a result, successful claimants often receive substantial retroactive benefit awards through a lump sum payment. One very real consequence of the administrative delays is that as the retroactive award grows, so does the claimant's attorney's claim for fees pursuant to a

1

contingency agreement. For example, in this matter, Balin seeks a fee of over $20,000, resulting from two retroactive awards totaling over $84,000.

This is an indisputably troubling result when placed in context. A successful claimant, by definition, has been found disabled and unable to work. Due to delays, the claimant can often go years without receiving benefits. Herein, Thatch went nearly five years without benefits. If Thatch had received her benefits in even two years, she would have received the latter three years of benefits without any claim for attorney fees against them. However, due to administrative delay, the full first five years of Thatch's benefits are subject to a request for attorney fees. With this backdrop in mind, the Court reviews Balin's request for attorney fees.

## II.  LEGAL STANDARD

An attorney who successfully represents a social security claimant may seek reasonable fees under 42 U.S.C. § 406(b)(1)(A) which provides:

> Fees for representation before court
>
> (1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.

The "legislature has drafted the fee provision so that there is a cap of twenty-five percent of the past due benefits allowed for recovery and has inserted the requirement that the court must determine the 'reasonableness' of the award up to that maximum." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc).

The twenty-five percent fee agreement "should be given the weight ordinarily accorded a rebuttable presumption." *Id.*

> Deductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended.
>
> As to the first category, delay is probably the most common problem encountered in evaluating the attorney's intentional or unintentional neglect. Unfortunately, because the award is based on the amount of "past-due" benefits which increase as time passes, a lawyer is almost always financially served by delay in a final decision on the claim. *See e.g., Blankenship v. Gardner*, 256 F.Supp. 405, 416 (W.D.Va. 1966) ("[I]t will always be of financial benefit to the lawyer to delay the case as much as possible so that the accumulated benefits in which he is to share will be larger"); *see also Webb v. Richardson*, 472 F.2d at 537 ("courts should be especially hesitant to award the statutory maximum in cases in which delays of any consequence have occurred"); *Dearing v. Secretary of Health & Human Services*, 815 F.2d 1082 (6th Cir. 1987) (holding past due benefits could not be calculated beyond three months after claimant was ready for trial, even though the delay was not due to the fault of counsel).

*Id.* at 746-47.  Furthermore,

> Although we recognize that there are cases where the lawyer's unusual skill or diligence wins the case, typically the number of hours that are required to prosecute an appeal from the Secretary's determination will not vary greatly and will bear little if any relationship to the results achieved. Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate. The reviewing courts should not hesitate to make reductions in such situations, and at the other end of the spectrum should only allow maximum fees for extensive effort on the part of counsel who have overcome legal and factual obstacles to the enhancement of the benefits awarded to his client.

*Id.* at 747 (footnote omitted).

### III. LEGAL ANALYSIS

Unfortunately, in this matter, the fee request is so bereft with problems that a complete denial of the motion is required.[1]

### 1. The minor child's benefits

First, there is the fact that the motion seeks 25% of not only Carla Thatch's retroactive benefits, but also 25% of the retroactive award to her minor child. This request is flawed for several reasons. Foremost, Balin has no fee agreement with the minor child. Balin entered into a fee agreement solely with Thatch – there is no mention of the minor child, nor any indication that the fee agreement would also cover services to the minor child. As such, Balin has no contractual basis to seek 25% of the minor child's retroactive award.

Moreover, even if the Court were to look past this flaw in the motion, the Court would be confronted with the admission that Balin performed ***no services*** on behalf of the minor child. Balin conceded that the child's benefits were a "piggyback" claim that flowed naturally from success on the mother's claim. As a result, Balin conceded that she performed no actual work on behalf of the minor child. *See, e.g., Shackles v. Barnhart*, 2006 WL 680960, at *2 (E.D.Pa. Mar. 15, 2006) ("it is this additional amount that constitutes a windfall to counsel because no additional work was required or risk taken to obtain this portion of the award.") Accordingly, her request for $7,367 (25% of the child's retroactive award) would clearly result in a windfall. In summary, Balin seeks the more than $7,000 from the child when she 1) had no fee agreement with the child, 2) performed no services on behalf of the child, 3) had no increased contingency risk by virtue of the child's existence, and 4) provided the Court no basis for such an award.

---

[1] It is important to note that the denial of this motion does not leave Balin without compensation for her time before this Court. She was awarded EAJA fees of $5,100 based upon a stipulation with the Commissioner. The Court would also note that despite the discrepancies highlighted in Balin's itemized hourly statement, the Commissioner has not sought reconsideration of the EAJA fee award. This is precisely the same itemized statement of time that Balin conceded misrepresented the hours that she *personally* worked on this matter.

4

Given those facts, the request for a portion of the *child*'s retroactive award borders on unconscionable.

   2. **Thatch's benefits**

A review of Balin's request for a portion of Thatch's retroactive award also reveals numerous, significant issues that require denying her motion. Further, the errors, omissions, and misstatements are so egregious, the Court must detail them despite Balin's belated attempt to withdraw her motion.

   a. *Billing Irregularities*

Balin's misstatements began almost immediately during the hearing before the Court.

THE COURT: You did all of the work in this case and all of the work that's spelled out in your fee application?

MS. BALIN: I did, but, you know, you don't work in a vacuum. Of course, I have a staff that assists me.

Similarly, Balin submitted an affidavit that indicated: "A separate itemized statement setting forth *my legal service*s rendered at the Federal Court level is attached[.]" Doc. 24-4 at 1 (emphasis added). These statements were quickly shown to be demonstrably false.

The itemized statement of fees includes 2.5 hours of time for conversations with Thatch. During the hearing, the Court learned that, other than a telephone call to discuss the motion for fees that occurred within days of the June 20 hearing, Thatch had *never* spoken to Balin. Balin did not dispute this fact. Instead, Balin quickly backtracked from her original statement and indicated that an associate with her firm had handled some of the matters within her itemized statement of time. This is particularly relevant for several reasons. First, Balin seeks to justify the reasonableness of her fees by relying solely upon her own hourly rate of $320 per hour. Thus, by claiming hours for work performed by associates and/or staff, Balin inflates the hourly

rates of those individuals to her own rate.[2]  Second, Balin's lack of candor about which hours of work were performed specifically by her calls into question the validity of her entire fee request.

Balin relies upon the holding in *Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 422 (6th Cir. 1990) in support of her motion.  In *Hayes*, the Sixth Circuit concluded that no windfall existed in a situation where dividing the number of hours by the total amount of the fee requested resulted in no more than twice the standard rate for such work in the relevant market.  In that regard, the Court finds it highly suspect that Balin's request for fees works out to be precisely twice her hourly rate of $320.  Given that Balin's itemized statement includes 1.1 hours for preparing the itemized statement itself, it gives the Court great pause to find that the numbers suggested by Balin fit so nicely into the Sixth Circuit's precedent.  Coupled with Balin's lack of candor, it suggests that the hours devoted before this Court were manipulated to maximize Balin's chance of recovery of the full 25% of the retroactive benefits.

Additionally, as noted above, Balin initially claimed to have done all of the work before this Court.  She then conceded that work had been done by others.  However, at no time did she ever make an effort to quantify the actual amount of work performed by her, her associates, and her staff.  In that regard, the Court takes judicial notice of the fact that Balin is counsel of record in 40 pending social security appeals within this District.  Moreover, on cases before the undersigned, Balin has routinely cited her heavy case load in requests for continuances.  Given that number of cases, coupled with any administrative hearings Balin may also attend, it becomes all the more unlikely that Balin herself performed the majority of the hours that she included in her itemized statement.

b. ***Standard rate for the relevant market***

---

[2] While indicating that another attorney handled some matters, Balin did not indicate whether paralegals or other staff was involved – making it impossible to accurately determine the hourly rates for all those that may have performed work on this matter.

Balin's request for fees is also deficient in other ways beyond her misstatements and/or omissions. For example, the Sixth Circuit has time and again discussed the standard rate for work in the relevant market. In her motion, Balin makes no attempt to demonstrate the standard rate in the relevant market. Instead, she simply utilizes her own hourly rate. To that extent, the Court would note that Balin did not even to bother to include that amount in her affidavit – stating it only in her brief in support of her motion. Furthermore, it has been the Court's experience that these matters are almost universally performed under contingent fee agreements. Thus, it is somewhat unclear how Balin arrives at even her own hourly rate because there is nothing in the record to suggest she has ever *actively* billed a social security client at that rate – ignoring of course that Balin's hourly rate directly coincides with the hours claimed to maximize her recovery in this matter.

*c. Complexity of the case*

Even if the Court were to set aside all of the misstatements and omissions in the motion for fees and accompanying affidavit and exhibits, Balin's motion would still be DENIED. As the Sixth Circuit noted in *Rodriguez*, supra, "Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate." Despite any argument from Balin, this case was just such a case. In her 17 page brief, Balin argued that the administrative law judge had not followed the treating physician rule, had not properly included all of Thatch's limitations in her residual functioning capacity, and improperly assessed Thatch's credibility. None of these theories required extensive legal research – they are not novel theories in any manner.

Of the 17 pages of the brief, the first nine pages are nothing other than a regurgitation of Thatch's medical history and the standard of review applicable to this Court. The final page of the brief is solely a conclusion paragraph and signature block. Thus, the brief contains a total of 7 pages of argument, focused on the three straightforward, routinely argued errors discussed above. Despite these facts, Balin claims to have expended over twenty hours researching and drafting the brief.

Additionally, the arguments generated a stipulated remand. Thus, while providing a benefit to Thatch, the stipulated remand also meant that Balin was not required to review an opposing brief, file a reply brief, review a Report and Recommendation, or file objections to the Report. Despite not having to perform those acts, Balin claims to have expended a total of 32.9 hours on matters before this Court.

### d. *Fees for requesting fees*

Finally, with respect to Balin's hours, the Court would note that Balin claims to have spent 1.1 hours creating her itemized statement of time and 4 more hours drafting her motion for attorney fees. At her suggested hourly rate of $640 hour, Balin would be paid $3,200 from the award of retroactive benefits solely based upon time devoted to asking *for those very fees.* The Court cannot fathom approving an award of more than $3,000 solely for work on a pro forma motion for attorney fees – especially a motion filled with the misstatements and omissions detailed above.

### e. *Professionalism concerns*

The Court is also somewhat troubled by Balin's admission that she took it upon herself to make *ex parte* telephone calls to the offices of the administrative law judge handling Thatch's claim. Balin would utilize that opportunity to ask about the progress of the case, despite the lack

of any opposing counsel on the call. While it does not have any bearing on the Court's ruling, it is nonetheless troubling.

The lack of opposing counsel involved in the telephone calls does not come as a surprise to the Court. Despite conducting a lengthy hearing on Balin's motion for fees and highlighting her misstatements, the Court heard essentially no argument from the Commissioner. Thus, while charged in some capacity with ensuring a fair result for claimants, the Commissioner idly stood by while Balin sought to take over $20,000 in retroactive benefits utilizing a highly suspect motion for fees. For that matter, the Commissioner directed essentially no questions to Balin or Thatch and offered no argument to the Court about the propriety of Balin's request for fees. Despite being charged with ensuring the fair resolution of Thatch's claim and protecting the Social Security fund, the Commissioner aided the Court in no manner. The one-sided nature of the hearing, with Balin questioning her own client, begs the question of who is left to protect the claimant and who is left to ensure that funds are properly distributed between counsel and claimant.[3]

Moreover, it is also troubling to the Court that Balin failed to provide Thatch a copy of her motion for attorney fees until shortly before the hearing, nearly six months after it was filed. It is apparent to the Court that Thatch would never have received a copy of the motion if the Court had not set the matter for a hearing that required Thatch's participation. This is problematic for several reasons. First, without Thatch's input, the Court would not have come to learn that Balin's itemized statement of hours was false. Second, as Balin sought over $21,000

---

[3] While beyond this Court's authority, it may well be time for Congress to consider creating a process for the appointment of counsel to claimants to remove the financial incentive that arises to delay the progression of social security claims.

and the Administration had withheld less than $14,000[4] from the retroactive benefits, if the Court had simply granted the motion without inquiry, Thatch would have owed Balin more than $7,000 while never having been given the opportunity to even see the motion at issue. Finally, as an attorney, Balin was ethically required to keep her client reasonably informed about the status of the matter. By leaving Thatch entirely in the dark regarding the motion for attorney fees, Balin fell well short of this requirement.

### *f. Retroactive award increased by delay*

Finally, the Court also notes that a substantial portion of the fees that Balin claims to have "earned," were generated through nothing other than delay. Thatch applied for benefits on March 24, 2006. It was not until January 12, 2009 that the initial administrative proceedings were concluded. The matter then progressed quickly through this Court. The complaint was filed on February 27, 2009, and the matter was remanded for further proceedings on October 30, 2009. Thatch then finally received a favorable determination of her benefits on August 10, 2011. Excluding the time before this Court, Thatch spent a total of 1674 days in solely the *administrative* portion of her claim. For Court decisions resulting in immediate benefits, the Sixth Circuit has addressed this issue. *See Dearing v. Secretary of Health & Human Services*, 815 F.2d 1082 (6th Cir. 1987) (holding past due benefits could not be calculated beyond three months after claimant was ready for trial, even though the delay was not due to the fault of counsel). By implementing the three-month rule, the Sixth Circuit ensured that counsel would not be enriched by virtue of a slow judicial process. To date, no such rule exists for delays in the administrative process.

---

[4] The Administration withheld 25% of Thatch's benefits, but did not withhold any amount from her minor child's benefits.

To that extent, the Court would note that the Social Security Administration has publicly indicated that its goal is to process claims in 270 days. As of June of 2011, the administrative appeals process averaged roughly 369 days. Given that Thatch went through such a process twice, her process would have ideally taken 540 days and been within average had it lasted 738 days. Instead, her process took more than twice that long – resulting in a substantial retroactive award through no fault of the claimant.

While this Court need not ultimately reach the issue, it seems perverse that an ultimately successful disabled claimant should be further punished by the delays of the administrative process. Thatch filed her application on March 24, 2006. It was more than 5 years later before she was ultimately successful. Thus, for five years, Thatch was disabled and not receiving the benefits to which she and her child were entitled by law. By not taking into account this administrative delay in evaluating a request for attorney fees, the claimants are punished twice. First, they do not receive their benefits in a timely manner. Second, their retroactive benefits are reduced by 25% for the full length of the administrative process. Thus, the only party ultimately benefitting from such a delay is the attorney. Both the Social Security Administration and the Sixth Circuit would be wise to examine the continued propriety of ignoring these lengthy delays and approving substantial fee awards that grow and grow from nothing more than delay.

### IV. CONCLUSION

Balin's request for attorney fees is rife with errors, misstatements, and omissions. Furthermore, the Court would note that Balin's demeanor during the oral hearing was also somewhat troubling. Balin's responses to the Court's questions and her tone of voice suggested that she was somehow offended that the Court had the audacity to question her request for fees. In fact, it was clear from her responses that Balin felt that her motion should have simply been

rubber stamped by this Court because *on paper* it fit neatly into the rules and standards adopted by the Sixth Circuit.  However, as detailed above, the Court's questions revealed that Balin had deliberately attempted to bill for hours at her hourly rate for work done by others.  It also indicated that Balin could not even assert who had performed each of the itemized acts in her billing statement.  Thus, the Court's inquiry demonstrated that the motion was not well taken in any capacity.  The motion is DENIED.

Within her notice of withdrawal of her motion for attorney fees, Balin has indicated that she will be pursuing her fees under 42 U.S.C. § 406(a) directly with the Social Security Administration.  Given the significant irregularities in her request before this Court, the Court instructs Balin to submit a copy of this order to the Administration to accompany any request for fees made before that entity.  Furthermore, counsel for the Agency is likewise instructed to provide a copy of this order to the person or department responsible for reviewing Balin's claim for fees before the Agency.

IT IS SO ORDERED.


Dated:  July 13, 2012                              */s/ John R. Adams*
                                                   JOHN R. ADAMS
                                                   UNITED STATES DISTRICT JUDGE